IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROGER HUBBARD,**                                   Case 1:14 CV 2770

      Plaintiff,

      v.                                             Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                     MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Roger Hubbard ("Plaintiff") filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 14). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI on January 6, 2005, alleging a disability onset date of January 1, 2000. (Tr. 166). Plaintiff applied for benefits due to a heart condition, back problems, high blood pressure, and breathing difficulties. (Tr. 174). His claim was denied initially (Tr. 144) and upon reconsideration (Tr. 140). Plaintiff had a hearing before an ALJ on June 16, 2008 (Tr. 132); the ALJ issued a notice of unfavorable decision on September 12, 2008 (Tr. 66-74). The Appeals Council remanded the ALJ decision for rehearing on August 18, 2010. (Tr. 58-62). Plaintiff had a second hearing on August 23, 2011, this time before a different ALJ. (Tr. 114). This ALJ

issued a notice of unfavorable decision on February 24, 2012. (Tr. 46-56). Again, Plaintiff appealed to the Appeals Council, who again remanded the case for rehearing on March 15, 2013. (Tr. 40-42). The Appeals Council instructed the next ALJ to obtain additional evidence concerning Plaintiff's impairments, re-evaluate the opinions of the medical sources, further consider the Plaintiff's RFC, and if necessary, obtain further vocational expert ("VE") testimony. (Tr. 41).

On October 23, 2013, Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before a third ALJ after which he found Plaintiff not disabled. (Tr. 17-37, 1281-1305). For a third time Plaintiff appealed the decision; this time the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 9-11); 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff filed the instant action on December 17, 2014. (Doc. 1).

### FACTUAL BACKGROUND

#### *Personal Background and Testimony*

Born May 6, 1964, Plaintiff was 49 years old at the final hearing before the ALJ. (Tr. 1284). He did not complete high school and had past work as a stocker and maintenance worker. (Tr. 181, 1285).

At the hearing, he reported using nasal oxygen for just under one year. (Tr. 1284). He appeared at the hearing with a cane but admitted it was never prescribed by a doctor. (Tr. 1285-86). Plaintiff reported using a CPAP machine frequently and that his energy level improved with use, but he claimed it clogged his sinuses, preventing him from using it every night. (Tr. 1288). Plaintiff's main complaints were shortness of breath, which was worsened by heat, and back pain. (Tr. 1289-90). He also complained of chest pain due to atrial fibrillation and leg swelling

2

which required him to elevate his legs. (Tr. 1293). Plaintiff testified he always took his medications. (Tr. 1299-1300).

He reported not preparing any meals himself, trouble with sleeping and memory, not socializing, not being able to read or count, and difficulty lifting, climbing stairs, standing, kneeling, and walking. (Tr. 190-96). Plaintiff stated his brother and a friend did all the household chores and took him grocery shopping. (Tr. 1295-96).

### Relevant Medical Evidence

The medical record in the Transcript is voluminous and dates back to 2000. For the sake of brevity the Court will summarize the majority of the records without discussion of each individual care provider or visit unless necessary. Preliminarily, Plaintiff has admitted to cocaine use (Tr. 267, 270, 450, 609) and being a smoker for over twenty years (Tr. 218, 296, 367, 477, 450, 544, 609, 761, 772); however, he denied any cocaine use after 2009 and denied smoking after 2012 (Tr. 1122).

#### Cardiopulmonary Issues

Throughout the earlier portion of the record ranging from 2000-2009, Plaintiff's doctors reported uncontrolled or sub-optimally controlled hypertension, despite reports that his hypertension improved while medicated. (Tr. 218, 229, 278, 262, 312, 316, 317, 407, 435, 501, 505, 532, 538, 570, 575-76). Plaintiff also consistently reported and received treatment for shortness of breath and chest pain (Tr. 218, 229, 317, 424, 425, 426, 427, 430, 433, 435, 450, 475, 534, 560, 570, 575, 594, 649); however, on examination he had normal heart and chest sounds (Tr. 317, 318, 427, 429-30, 433, 435, 475, 481, 529, 538, 545, 571, 608, 645-46) and objective testing – x-rays and echocardiograms – revealed no or minor abnormalities (Tr. 225, 248-50, 256, 307, 431, 432, 434, 436, 463, 476, 496-97, 526, 534, 544, 547-48, 573-74 576, 598,

604, 653-54). During this time period, Plaintiff registered ejection fractions – a measure of heart function – between 39% and 60%.[1] (Tr. 256, 434, 544, 548, 576). Plaintiff was diagnosed with congestive heart failure in February 2007, yet a cardiac catheterization performed in January 2008 revealed "trivial coronary artery disease". (Tr. 475, 548). During this period, Plaintiff was hospitalized over a dozen times for cardiopulmonary complaints.

Plaintiff's complaints of shortness of breath, palpitations, and chest pain continued through 2010, 2011, and 2012. (Tr. 772, 893, 896, 918, 951, 960, 1025, 1027, 1082, 1096, 1125). But on examination, he was consistently found to have normal heart sounds and clear lungs. (Tr. 762, 775, 830, 952, 961, 1024, 1026, 1028, 1030, 1033, 1126). Plaintiff's recurrent atrial fibrillation was found to resolve itself on its own without need for additional medications or treatment. (Tr. 893, 952). Twice in 2011, his shortness of breath and atrial fibrillation were attributed to exacerbations of chronic obstructive pulmonary disease ("COPD") and it was recommended he be evaluated for home oxygen. (Tr. 893, 901, 918). Objective testing in this period again proved unremarkable: he had four normal echocardiograms which showed left ventricular ejection fractions at 55-60% and two chest x-rays which revealed no new disease process. (Tr. 766-67, 902, 906, 954, 1021, 1153). However, a perfusion imaging study performed in February 2011 revealed an ejection fraction of 39% but found no evidence of ischemia and was deemed normal from a coronary standpoint. (Tr. 764-65). It was also noted during this period that Plaintiff's blood pressure was better controlled with medication. (Tr. 960, 1018, 1023, 1030). In this period, he was hospitalized over half a dozen times for related complaints.

---

1. An ejection fraction of above 55% is considered normal. An ejection fraction between 50% and 55% may be considered borderline normal or borderline reduced. Ejection fractions below these percentages may indicate weakened or damaged heart muscle or long-standing uncontrolled high blood pressure. THE MAYO CLINIC, http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited February 5, 2016).

In 2013, Plaintiff reported shortness of breath, chest pain, palpitations, and dizziness (Tr. 1034, 1040, 1046, 1240); but heart and lung sounds were largely normal (Tr. 1038, 1043, 1241, 1244). He had two normal echocardiograms with ejection fractions of 60%. (Tr. 1140-41, 1052). According to the record, Plaintiff was hospitalized for cardiopulmonary issues twice in 2013.

Furthermore, doctors had linked his shortness of breath and atrial fibrillation to uncontrolled blood pressure, morbid obesity, and cocaine use. (Tr. 548, 570, 575, 607, 645-46, 761, 772). Plaintiff reported an improvement in all symptoms with weight loss except an increase in knee pain due to exercise. (Tr. 1030). At points in the record, Plaintiff reported utilizing home oxygen consistently but there is no record of its prescribed frequency or dosage. (Tr. 1010, 1057, 1158, 1255).

*Musculoskeletal Pain*

Beginning in the spring of 2005, Plaintiff complained of mild neck and back pain from a car accident that did not restrict his activities. (Tr. 338-39, 340-52, 358-60). His complaints of lower back pain persisted and increased in severity. (Tr. 428, 433, 435, 443, 775, 779). Plaintiff described the pain as sharp, shooting, stabbing, and reported exacerbation with walking, sitting, or standing. (Tr. 775). Yet, a lumbar MRI in December 2008 revealed no stenosis and was overall normal. (Tr. 568). On multiple physical examinations, he had normal bilateral straight leg raise tests and normal strength, sensation, and reflexes bilaterally in his lower extremities. (Tr. 778, 781, 785). Plaintiff reported decreased pain by 60% with prescription pain relievers and facet injections. (Tr. 783, 789, 790, 844).

Plaintiff continued to complain of lower back pain into 2010 when he was diagnosed with degenerative joint disease and discogenic pain. (Tr. 884). However, a MRI of his lumbar spine revealed normal alignment, normal disc heights, and no stenosis. (Tr. 883). Plaintiff again sought

steroid injections for pain relief. (Tr. 885, 887). Also, a right knee x-ray showed no significant degenerative joint disease. (Tr. 972).

Throughout 2012 and 2013, Plaintiff received treatment for lumbar pain which he described as aching and constant (Tr. 1170, 1181, 1191, 1255, 1266); but reported the symptoms could be controlled with medication (Tr. 1266).  He also complained of right knee pain in 2012 which was normally relieved by steroid injections. (Tr. 1170, 1181, 1198, 1255, 1266). Physical examinations from this time show decreased range of motion in the right knee and lumbar spine; Plaintiff also reported gait problems. (Tr. 1171-72, 1182, 1185, 1192, 1202, 1209, 1260, 1270-71).

*Other Ailments*

Plaintiff also complained of swelling in the lower extremities but his complaints were not constant. (*See* Tr. 427-30, 538, 546, 570, 695, 762, 773, 830, 961, 1024, 1035, 1042, 1070, 1171, 1270). It was noted that Plaintiff's failure to comply with diuretic medication was most likely causing his edema. (Tr. 894).

Plaintiff was prescribed a CPAP machine to assist with obstructive sleep apnea but Plaintiff was not consistently compliant in its use. (Tr. 430, 477, 522-23, 526, 529, 605, 606, 607, 896, 898, 1012, 1014, 1015, 1054). In January 2012, his doctor noted consistent use of the CPAP was improving his blood pressure control. (Tr. 1023). However by February 2013, it was again reported Plaintiff was non-compliant with the CPAP and failed to show for numerous office visits. (Tr. 1066).  On multiple occasions, his doctors suggested his recurrent atrial fibrillation could be linked to hypoxia caused by his failure to use the CPAP. (Tr. 575-76, 606-07, 952, 1018, 1042).

6

At multiple points in the record, Plaintiff's lack of psychiatric symptoms was noted. (Tr. 1086, 1173, 1193, 1203, 1261, 1272).

*Dr. Lavinia Cozmin*[2]

Plaintiff established care with Dr. Cozmin on February 4, 2008, complaining mainly of hypertension and back pain; but he denied chest pain, palpitations, and shortness of breath. (Tr. 531).  He returned in May 2008 and reported he was using his CPAP, his hypertension was improving, and he denied shortness of breath and chest pain. (Tr. 532). On June 12, 2008, Plaintiff reported shortness of breath but denied chest pain. (Tr. 858-59). He also reported anxiety, depression, difficulty concentrating, and an inability to focus. (Tr. 859). His physical examination revealed clear lungs, normal heart sounds, bilateral lower extremity edema, and a depressed affect. (Tr. 859-60). Plaintiff returned in August 2008 and reported improvements in hypertension and denied shortness of breath, chest pain, palpitations, and psychiatric problems. (Tr. 855-56).

At five appointments spanning the entire 2009 year, Plaintiff reported no fatigue, dyspnea, chest pain, palpitations, gait disturbances, or psychiatric problems. (Tr. 839, 844, 847, 850, 853). Plaintiff's hypertension was uncontrolled in early 2009 but had stabilized and improved with medication by June. (Tr. 852, 849, 846). An August 2009 chest x-ray revealed "no active cardiopulmonary disease". (Tr. 845).

Dr. Cozmin prescribed a wrist splint to treat carpal tunnel syndrome in his left wrist in March 2010. (Tr. 836). In the first part of 2010, Plaintiff reported no dyspnea, wheezing, chest pain, palpitations, gait problems, or psychiatric symptoms. (Tr. 829, 833, 836, 837). On August 5, 2010, Dr. Cozmin reported his hypertension was exacerbated by anxiety and stress but

---

2. One of Plaintiff's arguments on appeal is the weight given to Dr. Cozmin's opinions; as such the entirety of her treating history with Plaintiff is summarized herein.

Plaintiff denied chest pain, irregular heartbeat, shortness of breath, fatigue, or weakness. (Tr. 823). Dr. Cozmin also reported Plaintiff's COPD was controlled but aggravated by moderate activity, and accordingly, Plaintiff complained of dyspnea on exertion. (Tr. 823). On physical examination, he had decreased breath sounds, normal heart sounds, edema in his feet, and "no unusual anxiety or evidence of depression." (Tr. 825). Plaintiff returned in December 2010, complaining of back pain that was managed with pain medication but not relieved by steroidal injections. (Tr. 932). At this visit, Dr. Cozmin remarked Plaintiff's obesity was "incapacitating" and had associated psychological symptoms of depression, fatigue, and low self-esteem. (Tr. 932). Plaintiff did not report chest pain or palpitations and physical examination revealed normal chest and lung sounds. (Tr. 932-34).

Following a hospitalization earlier in June 2011, Dr. Cozmin surmised it was related to Plaintiff's uncontrolled hypertension which had improved since discharge. (Tr. 1008). On examination he had no shortness of breath, chest pains, palpitations, and his leg swelling was diminished. (Tr. 1008). In July, Dr. Cozmin reported Plaintiff's hypertension was stable and his COPD was improved with the use of inhalers but exertion brought on shortness of breath. (Tr. 967). On examination, Plaintiff had decreased breath sounds, irregular heart rate and rhythm, edema, decreased lumbar mobility, and a flat affect. (Tr. 969-70). In December 2011, Plaintiff reported lower extremity edema and shortness of breath but denied chest pain and palpitations. (Tr. 973).

On March 27, 2012, Plaintiff reported exertional shortness of breath, leg swelling, and sleep disturbances; but denied chest pain, palpitations, and gait problems. (Tr. 980-81). Dr. Cozmin found no respiratory distress, normal heart sounds, diffuse muscular tenderness, and bilateral lower extremity edema. (Tr. 981). In August, Plaintiff familiarly listed his symptoms as

shortness of breath, fatigue, leg swelling, and back pain. (Tr. 991). On examination, Dr. Cozmin observed normal heart sounds, scattered wheezes, edema below the knees, and tenderness in the knees. (Tr. 991). At a follow-up the next month, Plaintiff continued to report shortness of breath, palpitations, leg swelling, and fatigue. (Tr. 995-96).

***Opinion Evidence***

On June 12, 2008, Dr. Cozmin completed a RFC questionnaire on behalf of Plaintiff; she listed his impairments as sleep apnea, extreme obesity, hypertension, COPD, and chronic back pain. (Tr. 562). She reported fatigue, pain – at the level of six or seven out of ten, shortness of breath with manual exertion, depression, anxiety, and leg swelling as Plaintiff's symptoms. (Tr. 562-63). She also reported Plaintiff experienced dizziness as a side effect of his medications. (Tr. 563). Dr. Cozmin opined Plaintiff was incapable of even low stress work because his symptoms would constantly impede his ability to concentrate, he had poor mobility due to obesity, and dyspnea on minimal exertion. (Tr. 563-64). She further opined Plaintiff could continuously sit for 30 minutes, continuously stand for fifteen minutes, and sit/stand/walk for less than two hours in an eight hour workday. (Tr. 564). Dr. Cozmin concluded Plaintiff would also need a break every 30 minutes and would need to elevate his legs, but she did not specify for how long he would need to do either of these activities. (Tr. 565). She believed Plaintiff could never lift more than ten pounds and could only occasionally carry or lift weights of less than ten pounds. (Tr. 565). She also recommended he avoid humidity, dust, fumes, and gases due to his breathing problems. (Tr. 566). As a result of his impairments, she opined Plaintiff would miss more than four days of work in a month. (Tr. 566).

On July 21, 2011, Dr. Cozmin completed a medical source statement related to Plaintiff's obesity where she noted significant shortness of breath on exertion, peripheral edema, and sleep

apnea. (Tr. 944). She opined Plaintiff could not work at all; could stand for up to fifteen minutes; sit for up to 60 minutes; occasionally lift twenty pounds, bend, and raise both arms over shoulder level; frequently lift ten pounds and balance; but never stoop or tolerate heat. (Tr. 944). She stated these restrictions were derived from Plaintiff's morbid obesity, chronic atrial fibrillation, sleep apnea, and COPD. (Tr. 945).

In July 2013, Dr. Cozmin reaffirmed her opinion without making any changes. (Tr. 1167-68).

***Consultative Examiners***

*Dr. Thomas Zeck, Psychologist*

On July 25, 2005, Dr. Zeck observed relevant, coherent speech, no language issues, no depression, average concentration and remote memory, and average insight and judgment. (Tr. 367-68). Plaintiff reported performing few, if any, household chores, an inability to cook, and no hobbies, but he did state he occasionally went to the library, church, and played cards with friends. (Tr. 368). Dr. Zeck reported Plaintiff had a full scale IQ of 70 which placed him in the borderline intelligence range. (Tr. 368-69). Dr. Zeck opined Plaintiff had mild limitations in relating to others and had the emotional ability to perform simple tasks but questioned whether his physical limitations possibly detracted from this ability. (Tr. 370). He further opined Plaintiff had a mild impairment in his ability to understand, remember, and follow instructions and had no impairment in his ability to maintain attention, concentration, persistence, and pace – albeit in only simple, repetitive tasks. (Tr. 370). However, Dr. Zeck concluded his ability to withstand workplace pressures would be moderately impaired but only because of his physical limitations and not anything mental. (Tr. 370).

*James Spindler, M.S.*[3]

On March 24, 2011, Plaintiff underwent a second psychological consultative examination with Mr. Spindler. (Tr. 727). On examination, Plaintiff was friendly, relaxed, had coherent and relevant speech, sound judgment, and reported occasional depression and anxiety but denied panic attacks. (Tr. 729-30). Mr. Spindler determined Plaintiff had a full scale IQ of 66 (mild mental retardation) but reported Plaintiff "appeared to be functioning in the borderline range of intelligence". (Tr. 731). Mr. Spindler opined that due to his intelligence scores Plaintiff would have a limitation in understanding, remembering, and carrying out instructions if "strong practical academic skills are required" but believed him capable of a "variety of unskilled labor-type jobs." (Tr. 732, 736). He further opined Plaintiff had no serious problem in maintaining attention, concentration, persistence, or pace. (Tr. 732). Mr. Spindler also opined Plaintiff would have no problem responding appropriately to supervisor, co-workers, or workplace stressors. (Tr. 732-33, 737).

*Sara Losher, M.D.*

On May 11, 2013, Plaintiff saw Dr. Losher for a consultative examination and she opined Plaintiff could sit for 30 minutes, stand for ten minutes, walk for 25 feet, and lift five pounds. (Tr. 1158). On examination, she noted normal heart and lung sounds, no edema, steady gait, normal sensation, and symmetrical reflexes. (Tr. 1159). She also found normal strength and range of motion except in the right hip and right knee. (Tr. 1160). She reported Plaintiff was capable of completing his activities of daily living, such as feeding, bathing, and dressing himself, without difficulty. (Tr. 1160). Dr. Losher opined Plaintiff's COPD and need to be on

---

3. Mr. Spindler is a licensed psychologist with the Ohio Board of Psychology. His license number is #2204. (Tr. 727).

oxygen would impact his ability to walk and stand for extended periods of time, but otherwise he would be capable of working with normal breaks. (Tr. 1160).

### ALJ Decision

In December 2013, the ALJ found Plaintiff had the severe impairments of borderline intellectual functioning, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, obstructive sleep apnea, COPD, obesity, and atrial fibrillation; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 20-23). The ALJ then found Plaintiff had the RFC to perform sedentary work with the following limitations:

> [H]e can lift and carry up to [ten] pounds occasionally and lesser weights frequently; he can stand and walk up to two hours in an eight –hour workday; [Plaintiff] can sit up to six hours in an eight-hour workday, for one hour at a time and then would have to stand and stretch for one-to-two minute; he can occasionally use a ramp or stairs, but never use a ladder, rope, or scaffold; he can occasionally balance, stoop, and crouch, never kneel or crawl, he can occasionally push, pull, and use foot pedals; he can frequently reach, handle, finger, and feel; visual capabilities and communication skills are frequent; he must avoid high concentration of smoke, fumes, dust, and pollutants and high concentration of extreme heat; he should avoid dangerous machinery and unprotected heights; he should do no complex tasks but can do simple routine tasks.

(Tr. 23). Based on the VE testimony, the ALJ found Plaintiff had transferable sales skills and could perform work as a sorting machine operator, polishing machine operator, or food order clerk; and thus, was not disabled. (Tr. 36-37).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). When reviewing the ALJ's decision for substantial evidence, this court "may look to any evidence in the record, regardless of whether it has been cited" by the ALJ. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4.       What is claimant's residual functional capacity and can claimant perform past relevant work?

5.       Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he failed to properly evaluate the opinion evidence in the record; (2) he improperly analyzed Plaintiff's credibility; and (3) the RFC did not include all of his functional limitations and was not supported by substantial evidence. (Doc. 17, at 1). Each argument will be addressed in turn.

### *Treating Physician*

While Plaintiff presents his first assignment of error as a challenge to the weight of all the opinion evidence in the record, in his brief he focuses solely on the weight given to Dr. Cozmin's opinions. As such, the Plaintiff has waived all other arguments regarding the weight of other opinions in the record. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver).

Generally, the medical opinions of treating physicians are afforded greater deference than

those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

<u>2008 Opinion</u>

The ALJ accorded little weight to Dr. Cozmin's specific standing, sitting, walking, and stooping limitations included in the June 12, 2008 opinion because they were inconsistent with her treatment notes, had no objective basis, and she had only seen Plaintiff three times before rendering her opinion. (Tr. 31). The latter reason is especially important because it undermines the alleged treating physician relationship; a physician who has only seen Plaintiff three times in the course of five months does not have the "longitudinal picture of [a plaintiff's] medical impairment(s)" which would lead to granting the opinion controlling weight. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). *See e.g., Black & Decker Disabilty Plan v. Nord*, 538 U.S. 822, 832 (2003) ("[T]he assumption that the opinion of a treating physician warrants greater credit than the opinions of [others] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration."); *Helm v Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 n.3 (6th Cir. 2011); *Yamin v. Comm'r of Soc. Sec.,* 67 F. App'x 883, 885 (6th Cir. 2003). The treating physician rule is intended to grant deference to those medical sources who have a detailed and complete picture of the Plaintiff's medical history; that rationale does not apply to Dr. Cozmin's first opinion.

Although Dr. Cozmin was not a treating source at the time she wrote the 2008 opinion, the ALJ is still required to determine the weight of her opinion. §§ 416.902, 416.927. The factors for determining the weight of a non-treating source opinion are the same as those listed above for a treating source; as well any fact "which tend[s] to support or contradict the opinion". § 404.1527(c).

In finding little weight, the ALJ relied heavily on Dr. Cozmin's own treatment notes and their inconsistency with her alleged restrictions. (Tr. 31). For example, he mentioned that at two

out of the three visits with Dr. Cozmin Plaintiff denied chest pain and shortness of breath, and reported no psychiatric symptoms. (Tr. 31, 531-32). Despite his obesity being evident, the ALJ noted that Dr. Cozmin had made no remarks about Plaintiff's obesity or its risk factors in any of her records of those three visits. (Tr. 31, 531-32, 858). Further, he stated the records of Plaintiff's first two visits contain no objective findings – there is no evidence of physical examination or testing of any kind – but only of Plaintiff's subjective reports. (Tr. 31, 531-32). Apparently, the first time Dr. Cozmin performed any actual examination of Plaintiff was on June 12, 2008 (the date she rendered her opinion); where she noted clear breath sounds, normal heart rate and sounds, and bilateral lower extremity edema. (Tr. 859-60). It is difficult to reconcile these findings with the extreme limitations she opined because, with the exception of the edema, the normal objective findings would indicate the restrictions were based on Plaintiff's self-reported symptoms. Overall, the ALJ attacked the length of the relationship, the consistency, and the supportability of Dr. Cozmin's opinion; as such, his decision to afford the opinion little weight is supported by substantial evidence.

<u>2011 Opinion</u>

There can be no question that at the time Dr. Cozmin rendered her second opinion in 2011 (and affirmed it in 2013), she was Plaintiff's treating physician. Thus, her opinion is entitled to "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson,* 378 F.3d at 544.

Again, the ALJ afforded little weight to Dr. Cozmin's opinion because it was inconsistent with her treatment records. The ALJ cited to ample evidence in support of his conclusion that Dr. Cozmin's opinion on functional limitations was not supported by the medical evidence either in

her treatment records or in the record as a whole. In reviewing Dr. Cozmin's treatment notes there are numerous occasions where Plaintiff reported no symptoms of cardiopulmonary disease; physical examination revealed normal heart and lung sounds, and no gait disturbances; and he reported improvement in pain with medication. (*See* Tr. 829, 833, 839, 844, 847, 850, 853, 967, 980-81, 991, 1008). Also, despite opining a severe restriction on Plaintiff's ability to stand and walk, Dr. Cozmin never prescribed a cane or other ambulatory aid. Dr. Cozmin's records certainly reveal that Plaintiff suffered from COPD, obesity, and uncontrolled hypertension which reduced his ability to work; however, the ALJ's conclusion regarding the opined functional limitations was reasonable when compared with the evidence. *See Besaw*, 966 F.2d at 1030.

Further, throughout the remainder of the opinion the ALJ minutely discussed the medical record and while not explicitly labeled as reasons, clearly addressed the necessary factors. The Sixth Circuit has found an ALJ could meet the "good reasons" requirement with "his analysis of [a doctor's] other opinions or his analysis of [Plaintiff's medical] problems in general." *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (holding ALJ adequately addressed opinion by indirectly attacking both its consistency and supportability with other record evidence); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (to satisfy an indirect attack, the ALJ must "identif[y] 'objective clinical findings' at issue [or discuss] their inconsistency with [the doctor's] opinion").

Here, the ALJ adequately identified objective findings which did not comport with Dr. Cozmin's opined restrictions. (*See* Tr. 23-30). For example, Plaintiff's chest x-rays and echocardiograms revealed only minor abnormalities (Tr. 225, 248-50, 256, 307, 431, 432, 434, 436, 463, 475-76, 496-97, 526, 534, 544, 547-48, 573-74 576, 598, 604, 653-54, 766-67, 902,

906, 954, 1021, 1140-41, 1052, 1153); and MRIs and x-rays revealed only minor degenerative changes in Plaintiff's back and knee (Tr. 568, 883, 972). The ALJ also noted normal findings upon examination such as lack of chest pain, palpitations, dyspnea, or gait problems; negative straight leg raise tests; and full range of motion and reflexes. (Tr. 317, 318, 427, 429-30, 433, 435, 475, 481, 529, 538, 545, 571, 608, 645-46, 762, 775, 778, 781, 785, 830, 952, 961, 1024, 1026, 1028, 1030, 1033, 1038, 1043, 1126, 1241, 1244).

These findings refute the alleged severity of Plaintiff's conditions and do not provide an objective basis for Dr. Cozmin's restrictions. Granted, the ALJ did not particularly expound upon the required factors, but certainly citation to evidence such as this by the ALJ satisfies the requirement that he discuss inconsistent evidence. *See Dunlap v. Comm'r of Soc. Sec.,* 509 F. App'x 472, 476 (6th Cir. 2012) (holding the ALJ's failure to label his explanation as "good reasons" was not error). "The fact that the ALJ did not analyze the medical evidence for a second time (or refer to h[is] previous analysis) when rejecting Dr. [Cozmin's] opinion does not necessitate remand of Plaintiff's case." *Dailey v. Colvin*, 2014 U.S. Dist. LEXIS 82267, at *23 (N.D. Ohio) (citing *Nelson*, 195 F. App'x at 472).

While the treating physician rule was not strictly followed, its motivation was. Neither the Court nor Plaintiff was ever deprived of the ability to understand the disposition of the case because the ALJ provided a clear, comprehensible, and thorough reasoning as to his RFC. In this case, remand would be an "idle and useless formality" because the RFC is consistent with the record and the ALJ provided clear, yet indirect, reasoning for the weight given to Dr. Cozmin. *Hall,* 148 F. App'x at 464.

***Credibility***

When making a credibility finding, the ALJ must make a finding based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. But, an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

(vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony,

and other evidence." *Walters,* 127 F.3d at 531. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Plaintiff argues the ALJ failed to properly consider the regulatory factors listed above; however, this argument is not well-taken because the ALJ specifically addressed non-compliance with treatment, activities of daily living, aggravating factors, and treatment efficacy in determining Plaintiff's credibility. (Tr. 35). First, the ALJ cited Plaintiff's denial of illegal drug use (which continued until at least 2009), his history of smoking (which continued until 2012), and his morbid obesity. (*See* Tr. 35, 218, 267, 270, 296 450, 609, 772, 1122). These habits and the failure to lose weight are aggravating factors that he was repeatedly advised to address and were linked to the worsening of his symptoms. (*See* Tr. 548, 570, 575, 607, 645-46, 761, 772). Second, the ALJ remarked on Plaintiff's non-compliance with his treatment recommendations – such as failing to consistently take his medications and utilize his CPAP machine – despite the fact these treatments improved his symptoms. (*See* Tr. 35, 218, 262, 312, 316, 317, 407, 430, 435, 477, 501, 538, 570, 575-76, 605, 606, 607, 952, 1012, 1018, 1023, 1042, 1054, 1066). Third, the ALJ noted inconsistent activities of daily living such as the ability to travel on two occasions and his ability to walk to dinner daily. (*See* Tr. 35, 785, 1034).

In sum, Plaintiff's failure to cease poor personal habits and follow treatment recommendations, despite their ability to improve his symptoms; and his ability to engage in activities of daily living, beyond those to which he testified, undermine his claims regarding the severity of his symptoms. The ALJ considered proper factors, supported with citations to the

record, in determining Plaintiff's credibility and thus, his decision is supported by substantial evidence. *See Jones*, 336 F.3d at 476.

### RFC

Plaintiff's challenge to the RFC is twofold: first, the ALJ failed to include a restriction related to Plaintiff's moderate limitations in maintaining concentration, persistence, and pace; and second, the RFC did not account for Plaintiff's need for constant oxygen. (Doc. 17, at 21-24; Doc. 20, at 7-8). A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

First, the ALJ did not err by failing to include a functional limitation related to Plaintiff's concentration, persistence, and pace. Plaintiff erroneously concludes that the ALJ's finding at Step Three (i.e. Plaintiff had moderate limitations in this domain) necessitates a functional limitation in the RFC. (Tr. 22). However, this is directly contrary to the law and the ALJ's opinion which explicitly states his findings at Step Three are not an RFC. (Tr. 23). *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4; *Harrod v. Colvin*, 2015 WL 106102, at *16 (N.D. Ohio). Further, the two consultative opinions addressing Plaintiff's mental capacity – to which the ALJ gave significant weight – assessed no limitations in Plaintiff's ability to maintain concentration, persistence, or pace, if limited to simple tasks. (Tr. 30, 33, 370, 732). Considering the evidence and the ALJ's decision to limit Plaintiff to only simple tasks in his RFC, he adequately accounted for Plaintiff's mental limitations. (Tr. 23).

Second, the ALJ did not err by not including a restriction related to Plaintiff's oxygen tank in his RFC. It is important to note there is no evidence in the record, besides Plaintiff's statements, as to the necessity of or frequency of use of home oxygen. While Plaintiff argues the VE testimony undermines Plaintiff's ability to work with an oxygen tank, that is not the case. The VE testified work would be available but ultimately concluded he did not know whether accommodations for an oxygen tank would be possible. (Tr. 1303-04). Lack of knowledge on the VE's part no more proves Plaintiff's point than it does support the Commissioner's position. As the VE did not testify to an inability to work and no direct evidence as to the necessity of home oxygen exists, the ALJ did not err by not including a restriction for oxygen in the RFC.

Considering the evidence available to the ALJ and the discretion he has in constructing an RFC, the Court finds substantial evidence exists to support the RFC as written. Thus, Plaintiff's third assignment of error is overruled.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

 s/James R. Knepp II          
United States Magistrate Judge